## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION<br><br>            Plaintiff,<br><br>v.<br><br>TCL INDUSTRIES HOLDINGS CO., LTD.;<br>TCL ELECTRONICS HOLDINGS LTD.;<br>TCL COMMUNICATION LTD.; TCL<br>COMMUNICATION TECHNOLOGY<br>HOLDINGS LTD.; TCL MOBILE<br>INTERNATIONAL LTD.; HUIZHOU TCL<br>MOBILE COMMUNICATION CO., LTD.;<br>TCL MOBILE COMMUNICATION (HK)<br>COMPANY LTD.<br><br>            Defendants, | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pantech Corporation ("Pantech" or "Plaintiff"), for its Complaint against TCL Industries Holdings Co., Ltd.; TCL Electronics Holdings Ltd.; TCL Communication Ltd.; TCL Communication Technology Holdings Ltd.; TCL Mobile International Ltd.; Huizhou TCL Mobile Communication Co., Ltd.; TCL Mobile Communication (HK) Company Ltd. ("TCL" or "Defendants"), alleges the following:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

### THE PARTIES

2.      Pantech Corp. is an entity organized under the laws of South Korea, with a place of business at 13 Saimdang-ro 8-gil, Suite 402-J420, Seocho-gu, Seoul 06735, Republic of Korea.

3.      On information and belief, TCL Industries Holdings Co., Ltd. ("TCL Industries Holdings") is a limited liability company registered in the People's Republic of China, with its principal place of business located at 22/F, TCL Technology Building, No. 17, the Huifeng Third Road, Zhongkai Hi-Tech Development District, Huizhou City, Guangdong, PRC, 516006. On information and belief, TCL Industries Holdings participates in the design, manufacture, sale, and/or offer for sale of the TCL Accused Products.

4.      On information and belief, TCL Electronics Holdings Ltd. ("TCL Electronics") is a limited liability company duly organized and existing under the laws of the Cayman Islands, having an address of 5th Floor, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. The registered address of TCL Electronics is P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. On information and belief, TCL Electronics is an indirect wholly-owned subsidiary of TCL Industries Holdings and is involved in the manufacture and sales of TVs, smartphones, smart commercial displays, and smart home products, including the TCL Accused Products. TCL Electronics operates the website at http://electronics.tcl.com, and includes a Small-and-Medium-Sized Display unit, which oversees mobile communication devices and tablets, such as the TCL Accused Products.

5.      As noted in TCL Electronics's 2023 Annual Report, it and its fellow TCL companies ranked fourth in smartphone shipments in the United States, and third in the United States for shipments of tablets.

6.      On information and belief, TCL Communication Ltd. ("TCL Communication") is a corporation duly organized and existing under the laws of China, having an address of 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Communication is involved in the manufacture and

sale of smartphones and connective devices, and in the provision of related services. For example, TCL Communication applies for United States Federal Communication Commission ("FCC") certifications for use and sale of the TCL Accused Products in the United States, and has declared to the FCC that it is the manufacturer of the Accused Products.

7.    On information and belief, TCL Communication Technology Holdings Ltd. ("TCL Communications Tech.") is a limited liability company registered in the People's Republic of China, with its principal place of business located at 22/F, TCL Technology Building, No. 17, the Huifeng Third Road, Zhongkai Hi-Tech Development District, Huizhou City, Guangdong, PRC, 516006. On information and belief, TCL Communications Tech. participates in the design, manufacture, sale, and/or offer for sale of the TCL Accused Products.

8.    On information and belief, TCL Mobile International Ltd. ("TCL Mobile") is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from its corporate headquarters at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Mobile is indirectly the wholly owned subsidiary of TCL Electronics and is engaged in the activity of importing and/or distributing mobile devices and other products, such as the TCL Accused Products, and the rendering of related services.

9.    On information and belief, Huizhou TCL Mobile Communication Co., Ltd. ("Huizhou TCL Mobile") is a corporation duly organized and existing under the laws of the People's Republic of China, and conducts business from its corporate headquarters at 86 Hechang 7th West Road, Zhongkai Hi-Tech Development Zone, Huizhou, Guangdong 516006, China. On information and belief, Huizhou TCL Mobile is indirectly the wholly owned subsidiary of TCL

Electronics and is engaged in the activity of importing and/or distributing mobile devices and other products, such as the TCL Accused Products, and the rendering of related services.

10.    On information and belief, TCL Mobile Communication (HK) Company Ltd. ("TCL Mobile HK") is a corporation duly organized and existing under the laws of Hong Kong, and conducts business from a principal place of business at 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. On information and belief, TCL Mobile HK is indirectly the wholly owned subsidiary of TCL Electronics and is engaged in the activity of importing and/or distributing mobile devices and other products, such as the Accused Products, and the rendering of related services.

11.    On information and belief, TCL Industries Holdings, TCL Electronics, TCL Communication, TCL Communications Tech., TCL Mobile, Huizhou TCL Mobile, and TCL Mobile HK are part of an interrelated group of companies that together comprise one of the world's largest manufacturers of televisions and smartphones and one of the leading sellers of televisions and smartphones in the United States, including the TCL brands; these entities are therefore collectively referred to herein as "TCL." For example, TCL Electronics refers to itself and its subsidiaries as the "Group," such as in its 2023 Annual Report, describes itself as "a world-leading consumer electronics company" and states that the Group is involved in the "Small-and-Medium-Sized Display" business, which includes the sale of smartphones and tablets in the United States.

12.    On information and belief, TCL is part of the same corporate structure and distribution chain (together with other TCL subsidiaries, affiliates, and intermediaries) responsible for the design, manufacture, use, importation into the United States, offering to sell in the United States, and/or sale in the United States of TCL Accused Products, including for example through their website (https://www.tcl.com/us/en/products/mobile/Smartphones).

13.    For example, TCL sells for importation into the United States, import into the United States, and/or sell within the United States after importation one or more mobile cellular communications devices, such as the TCL 50 XL NXTPAPER 5G. Pantech reserves the right to accuse additional products of TCL as discovery proceeds.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*., and/or pursuant to 28 U.S.C. § 1367(a) as to Plaintiff's claims for breach of FRAND obligations and unjust enrichment (Counts IX and X) because these claims are inextricably related to Plaintiff's claims for patent infringement (Counts I-VIII).

15.    This Court has personal jurisdiction over TCL. TCL has continuous and systematic business contacts with the State of Texas and has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, by making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas. In addition, TCL conducts its business extensively throughout Texas and derives substantial revenue in Texas, by shipping, distributing, offering for sale, selling, and advertising (including through an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. TCL has purposefully and voluntarily placed in the stream of commerce one or more products and/or services that practice the Asserted Patents (as set forth below) with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. For example, TCL advertises its products (including those accused in this Complaint) for purchase on its webpage, accessible from the United States, including Texas, such as at https://www.tcl.com/us/en#. Certain of its

products are also available for purchase from Best Buy (e.g, https://www.bestbuy.com/site/tcl-10l-with-64gb-memory-cell-phone-unlocked/6413619.p?skuId=6413619).

16.     On information and belief, the TCL products accused in this Complaint are and have been sold in physical Best Buy retail stores located within the State of Texas and the Eastern District of Texas, for example, at 5514 S Broadway Ave, Tyler, TX 75703; 4210 St Michael Dr, Texarkana, TX 75503; and 422 W Loop 281 STE 100, Longview, TX 75605.

17.     In addition, or in the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2).

18.     Venue is proper in this district as to Defendants, which are organized under the laws of China. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

## ACCUSED INSTRUMENTALITIES

19.     TCL makes, uses, sells and offers for sale, provides, and causes to be used, now and within the past six years, mobile phones (e.g., Celero series) and certain other LTE, LTE-A, and 5G-capable devices (the "Accused Instrumentalities").

20.     For example, TCL advertises that the TCL 50 XE NXTPAPER 5G, TCL 50 XL NXTPAPER 5G, TCL 50 XL 5G, TCL 50 XE 5G, TCL 40 X 5G, TCL 40 XE 5G, TCL Stylus 5G, TCL 30 5G, TCL 30 V 5G, TCL 30 XE 5G, TCL 20 Pro 5G, TCL 20 A 5G, TCL 50 LE, TCL 40 XL, TCL 40 T, TCL 30 XL, TCL 30 SE, TCL 30 Z, TCL 30 LE, TCL 20 AX 5G, TCL 20S, TCL 20 SE, TCL 20 XE, TCL 10 Pro, TCL 10 5G UW, TCL 10 L, TCL K11, TCL ION V, TCL ION X, TCL ION Z, TCL A30, TCL SIGNA, TCL TAB 10 NXTPAPER 5G, TCL Tab Pro 5G, TCL TAB 10 5G, TCL Tab 8 Plus, TCL Tab 8 LE, TCL Tab 8 SE, TCL Tab, TCL Tab Disney Edition

2, TCL Tab Disney Edition, and TCL Tab Family Edition (collectively, the "TCL Accused Instrumentalities") devices are compliant with LTE, LTE-A, and/or 5G cellular network standards.

## **PATENTS-IN-SUIT**

21.    The Asserted Patents are U.S. Patent Nos. 9,548,839; 11,659,503; 11,051,344; and 12,267,876.

22.    U.S. Patent No. 9,548,839 (the "'839 Patent") is entitled "Method for mapping physical hybrid automatic repeat request indicator channel." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '839 Patent.[1]

23.    U.S. Patent No. 11,659,503 (the "'503 Patent") is entitled "Apparatus and method for establishing uplink synchronization in a wireless communication system." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '503 Patent.[2]

24.    U.S. Patent No. 11,051,344 (the "'344 Patent") is entitled "Method for transmitting and receiving random access request and transmitting and receiving random access response." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '503 Patent.[3]

---

[1] The named inventors of the '839 Patent are Jung Hoon Lee and Joon Kui Ahn. The U.S. patent application was filed on  May 29, 2015, published on  September 17, 2015, and the '839 Patent issued on  January 17, 2017. The inventors assigned a parent application, U.S. Patent App. No. 12/388,243 and any continuations thereto, including the application underlying the '839 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. transferred its interest to Pantech Co. Ltd. On July 6, 2016, Pantech Co., Ltd assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[2] The named inventors of the '503 Patent are Kibum Kwon and Myungcheul Jung. The U.S. patent application was filed on May 17, 2021, published on September 2, 2021, and the '503 Patent issued on May 23, 2023. The inventors assigned a parent application, U.S. Patent App. 13/578,531 and any continuations thereto, including the application underlying the '839 Patent, to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. transferred the interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[3] The named inventors of the '344 Patent are Min Seok Noh, Yeong Hyeon Kwon, Jin Sam Kwak, Dong Cheol Kim, Sung Ho Moon, Seung Hee Han, Hyun Woo Lee, and Dragan Vujcic. The U.S. patent application was filed on December 11, 2019, published on April 16, 2020, and the '344 Patent issued on June 29, 2021. The inventors assigned a parent application, U.S. Patent App. No. 12/347,352 and any continuations thereto, including the application underlying the '344 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. assigned

25.     U.S. Patent No. 12,267,876 (the "'876 Patent") is entitled "Method for transmitting and receiving random access request and transmitting and receiving random access response." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '876 Patent.[4]

26.     Pantech Corp. is the rightful owner of the '839, '503, '344, and '876, and holds the entire right, title and interest in the '839, '503, '344, and '876, including the right to collect for past damages.

## BACKGROUND

## Pantech Corp.

27.     Pantech Co., Ltd., the predecessor to what is now Pantech Corp.,[5] was originally founded in 1991 in Seoul, South Korea as a competitor in the wireless phone marketplace.

28.     Throughout the 1990s and 2000s, Pantech rose to become a leading manufacturer of mobile phones. By 2012, Pantech had become the second best-selling Korean handset maker.

---

its interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. Assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. assigned its interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[4] The named inventors of the '876 Patent are Min Seok Noh, Yeong Hyeon Kwon, Jin Sam Kwak, Dong Cheol Kim, Sung Ho Moon, Seung Hee Han, Hyun Woo Lee, and Dragan Vujcic. The U.S. patent application was filed on September 22, 2023, published on January 11, 2024, and the '876 patent issued on April 1, 2025. The inventors assigned a parent application, U.S. Patent App. No. 12/347,352 and any continuations thereto, including the application underlying the '876 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. assigned its interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. Assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. assigned its interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[5] Pantech Co., Ltd. was formed in 1991, and as the result of a restructuring and acquisition in 2015 became Pantech, Inc. Thereafter, Pantech Corporation was formed. Pantech, Inc. transferred its assets to Pantech Corp. as part of an asset sale in 2020 (in this section, these three entities are hereinafter referred to collectively as "Pantech" unless otherwise identified).

29.    Pantech's products were sold in South Korea, the United States, Japan, China, Europe, Vietnam, and other countries around the world. Pantech launched operations in the United States in 2003.

30.    Pantech's portfolio of intellectual property is broad and extensive, comprising thousands of worldwide patents and patent applications in the areas of telecommunications, "smart" devices, and Internet of Things products. Pantech's portfolio, in one aspect, covers wireless communication systems and devices and methods for using those communication systems. In the wireless technology space alone, Pantech holds more than 200 U.S. patents and applications, many of which have been declared standard essential patents.

31.    Pantech has invested heavily in research and development, investing, on average, over 10% of its annual revenue in research and development. Pantech's research and development efforts in network technology include, but are not limited to, technologies focused on LTE, LTE-A, and 5G networks, WCDMA/CDMA, WiMAX, WiFi, Near Field Communication (NFC), Visible Light Communication, Human Body Communication, Ultra-Wideband Communication LTE and IP Mesh Network.

32.    Over the last decade, Pantech has enthusiastically contributed to the 3rd Generation Partnership Project (3GPP) LTE/LTE-A standardization by submitting proposals to TSG RAN, RAN1, and RAN2. Indeed, Pantech secured numerous LTE/LTE-A Standard Essential Patents and patent applications (SEPs) in connection with its contributions. In 2014, National Applied Research Labs in Taiwan reported that Pantech held 1% of LTE-related SEPs, and that number has only increased since 2014.

33.    Recognizing the value of its own portfolio and its potential role in the Fourth Industrial Revolution, Pantech has committed to making its intellectual property available in the

marketplace, including to competitors. On its website, under the heading "IP Umbrella Services," Pantech offers to exchange intellectual property and technology, and collaborate with competitors and patent holders, through licenses, to enable the market to identify new technological ventures.

34.     Pantech Corp. is the owner by assignment of a portfolio of patents, including the Asserted Patents described in paragraphs 21-26 and in detail in the counts below, that relate to mobile device user interface features and technology for cellular communications networks, including variations or generations of cellular communication network technology such as, but not limited to LTE, LTE-A, and 5G, as discussed herein.

## **Negotiations Between the Parties**

35.     Cellular communication network technology is used to provide data transmission across mobile cellular networks.

36.     It is critical for cellular communication network technology to be standardized around the globe. Independent standard-setting organizations, like the European Telecommunications Standards Institute (ETSI), establish global standards for the telecommunication industries. ETSI, along with other standard-setting organizations, have made it possible to have global interoperability between networks, devices and network operators.

37.     ETSI sets forth a policy in order to balance intellectual property protections against the need for an open standard by designating certain intellectual property rights (IPR) as "essential." ETSI sets forth the following definition of "essential":

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

Clause 15.6 of the ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

38.     TCL is required to have a license to one or more essential patents owned by Pantech Corp. including the Asserted Patents that are identified as essential.

39.     Pantech and its predecessor entities, including Goldpeak Innovations, Inc., have made repeated and sustained efforts to notify TCL and its related entities of the existence, essentiality, and infringement of the Asserted Patents:

40.     **Initial Outreach by Predecessor**: On March 6, 2018, Goldpeak Innovations, Inc. (Pantech Corp.'s predecessor in ownership of the Asserted Patents or their family members) sent a letter to TCL's executive leadership, directed to the General Counsel. This letter offered to license patents then owned and/or managed by Goldpeak and Pantech Inc., including patents essential to cellular standards such as LTE and LTE-Advanced. The correspondence identified TCL products, such as Alcatel Idol 4S with Windows, Alcatel Fierce 4, Alcatel Cinch, Alcatel Streak, Alcatel Dawn Alcatel POP 7 LTE, and Alcatel Idol 4, as being covered by claims of the offered patents, and attached a list of Pantech's patents, including those covering TCL's products. The Asserted Patents, or family members with the same specification and claim scope, were specifically identified as being infringed by TCL's products. The letter also referenced the relevant portions of the cellular standards covered by the respective patents. On information and belief, TCL did not accept Goldpeak's offer to negotiate a license to the patents.

41.     **Follow-Up by Pantech:** After Pantech Corp. acquired the patents from Goldpeak and Pantech Inc., Pantech sent a follow-up letter to TCL's executive leadership on June 19, 2020. This letter notified TCL of Pantech Corp.'s acquisition of the patents, provided a list of the patents, identified an exemplary number of patents as being infringed by TCL, and listed a number of TCL products that infringe.

42.    **Ongoing Communications:** Pantech provided TCL with additional details regarding its patent portfolio and licensing proposal through subsequent correspondence on at least January 8, 2021, April 7, 2021, September 3, 2021, February 15, 2022, June 7, 2023, and January 8, 2025. These communications included technical details, updated lists of patents, and identification of the Asserted Patents (or family members), as well as references to the relevant 3GPP standards that are implemented in TCL's products. Pantech also provided claim charts and technical analysis demonstrating how TCL's products practice the claims of the Asserted Patents, and provided TCL with a draft license agreement.

43.    **Notice of Standards Essentiality:** In these communications, Pantech specifically called attention to the standards-essential nature of the Asserted Patents, referencing the relevant 3GPP standards that are implemented in TCL's products.

44.    **Notice of Additional Portfolio:** On September 3, 2021, Pantech provided TCL with notice that its subsidiary, Pantech Wireless LLC, had acquired the Signal Trust portfolio of patents, which included additional standard essential patents, and provided a list of the acquired patents. Pantech provided TCL with additional information regarding TCL's practice of such patents and made a licensing offer that included both the Pantech and Pantech Wireless patents, at the same rate as previously offered, reflecting a substantial discount.

45.    **Lack of Good Faith Engagement:** Despite these repeated efforts, Pantech was met with constant delay, ignored communications, and prolonged periods for responses. Pantech followed up by sending an updated list of Pantech's patents and exemplary claim charts on June 7, 2023. Still, TCL never engaged again following these discussions and correspondence. After TCL's extended silence, Pantech sent another letter on January 7, 2025, highlighting recent developments and licensing activity, which TCL ignored. Thus, TCL has engaged in holdout

behavior, including for example refusing to engage in good faith negotiations or to address the infringement allegations in a substantive manner.

46. **Constructive Knowledge:** As a major participant in the global telecommunications market, and with its affiliates being members of standard-setting organizations, TCL has constructive knowledge of the Asserted Patents by virtue of their declaration as standard essential patents (SEPs) and their inclusion in public standards documentation. TCL's ongoing importation, sale, and offer for sale of standard-compliant products in the United States further evidences its awareness and knowledge of the Asserted Patents.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,548,839

47. The allegations set forth in the foregoing paragraphs 1 through 46 are incorporated into this claim for relief.

48. On January 17, 2017, the '839 Patent, entitled "Method for mapping physical hybrid automatic repeat request indicator channel," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 14/726,014, filed on May, 29, 2015. The '839 Patent claims foreign priority to KR 10-2008-0124084, filed on December 8, 2008. A true and correct copy of the '839 Patent is attached as Exhibit 1.

49. Pantech is the assignee and owner of all right, title and interest in and to the '839 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for its infringement.

50. The '839 Patent provides critical improvements that allow user equipment (UE) devices to process signals from base stations indicating whether the base station successfully received transmissions from the phone (uplink transmissions). More specifically, the '839 Patent discloses at least apparatuses and methods for mapping a physical hybrid automatic repeat request indicator channel (PHICH) to at least one orthogonal frequency division multiplexing (OFDM)

symbol. Indices of resource element groups in which the PHICH is transmitted are determined according to a ratio involving the number of available resource element groups in the OFDM symbol.

51.     For example, claims 9-12 of the '839 Patent recite elements of PHICH mapping mandated by the LTE standard, including at least 3GPP TS 36.211, TS 36.213, and TS 36.331. *See* 3GPP TS 36.211 v8.9.0 at 48-49, 61-65 (§§ 3.1, 6.2.4, 6.9.1, 6.9.3) (OFDM symbols comprise a plurality of resource element groups, mapping PHICH to OFDM symbols; determination of resource element group indexes); 3GPP TS 36.213 v8.8.0 at 65-66 (§ 9.1.2) (UE determination of PHICH resource); and 3GPP TS 36.331 v8.7.0 at 24, 25, 84, 85, 103, 119, 125 (§§ 5.2.2.6, 5.2.2.9, 6.2.2, 6.3.1, 6.3.2) (UE determination of indexes).

52.     Upon information and belief, TCL and/or its subsidiaries or business partners has and continues to directly infringe at least claims 9-12 of the '839 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 9-12 of the '839 Patent (the "TCL Accused '839 Instrumentalities"). TCL also has and continues to directly infringe at least claims 9-12 by practicing claims 9-12 through the TCL Accused '839 Instrumentalities, and by causing the TCL Accused '839 Instrumentalities to practice the patented inventions.

53.     The TCL Accused '839 Instrumentalities include, for example, the TCL 50 XL NXTPAPER 5G and other LTE, LTE-A, and 5G compatible devices that constitute/support the apparatuses and methods for mapping a physical hybrid automatic repeat request indicator channel (PHICH) to at least one orthogonal frequency division multiplexing (OFDM) symbol. On information and belief, each of the TCL Accused '839 Instrumentalities incorporates a chipset,

application processor, SoC, or system-on-chip (e.g., MediaTek Dimensity 6100+ chipset) (referred to herein as the "chipset") that incorporates a processor and/or modem. Each such chipset (and thus each infringing device) complies with one or more of LTE cellular communication protocols including at least 3GPP TS 36.211, 3GPP TS 36.331, and/or 3GPP TS 36.213.

54.    Pantech made TCL aware of the '839 Patent and its infringement thereof at least as early as June 19, 2020, when Pantech explicitly identified the '839 Patent in correspondence sent to TCL.

55.    Since at least June 19, 2020, when TCL made Pantech aware of the '839 Patent, TCL's infringement has been, and continues to be willful.

56.    Upon information and belief, the TCL Accused '839 Instrumentalities are used, marketed, provided to, and/or used by or for TCL's partners, clients, customers/subscribers and end users across the country and in this district.

57.    Upon information and belief, TCL has induced and continues to induce others to infringe at least claims 9-12 of the '839 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to TCL's partners, clients, customers/subscribers, and end users, whose use of the TCL Accused '839 Instrumentalities constitute direct infringement of at least one claim of the '839 Patent. For example, TCL advertises and has advertised the use of its devices for LTE, LTE-A, and 5G communications. *See* https://www.tcl.com/us/en.

58.    In particular, TCL's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the TCL Accused '839 Instrumentalities, and providing instruction materials, training and services regarding the TCL Accused '839 Instrumentalities.

59.     Any party, including TCL's partners, clients, customers/subscribers, and end users, using the TCL Accused '839 Instrumentalities necessarily infringes the '839 Patent because the inventions of the '839 Patent are required to comply with the relevant cellular standards. TCL advertises its TCL Accused '839 Instrumentalities as compliant with LTE, LTE-A, and 5G, which induces others to infringe the '839 Patent. TCL has knowingly induced infringement since at least as early as June 19, 2020, when TCL was made aware of the '839 Patent.

60.     Upon information and belief, TCL is liable as a contributory infringer of the '839 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the TCL Accused '839 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '839 Patent. Each of the TCL Accused '839 Instrumentalities is a material component for use in practicing the '839 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the TCL Accused '839 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

61.     Pantech has been harmed by TCL's infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,659,503**

62.     The allegations set forth in the foregoing paragraphs 1 through 61 are incorporated into this claim for relief.

63.     On May 23, 2023, the '503 Patent, entitled " Apparatus and method for establishing uplink synchronization in a wireless communication system" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 17/322,832, filed on May 17, 2021. The '503 Patent claims priority to The '503 Patent claims priority to the following foreign patents: KR 10-2010-0012564, filed on February 10, 2010, KR 10-2010-0027230, filed on

March 26, 2010, and KR 10-2011-0008683, filed on January 28, 2011. A true and correct copy of the '503 Patent is attached as Exhibit 2.

64.    Pantech is the assignee and owner of all right, title and interest in and to the '503 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

65.    The '503 Patent provides improvements for uplink synchronization in telecommunications networks that use carrier aggregation. This is critical because uplink transmissions (transmissions from a phone to a base station) must be synchronized so that they arrive at the base station at the same time. More specifically, the '503 Patent discloses at least apparatuses and methods for establishing uplink synchronization in a wireless communication system supporting primary and secondary component carriers ("CCs"), through the use of timing groups. For instance, a user equipment, contains a processor configured to cause the apparatus to receive, through a primary CC belonging to a first uplink timing group, a Radio Resource Control (RRC) message comprising information related to a second uplink timing group, receive information indicating a random access preamble (RAP), transmit a RAP through one or more uplink CCs, each being set as a delegate CC for a respective second uplink timing group, and receive a random access response (RAR) including a timing advance (TA) value based on the RAP associated with the delegate CC or the respective second uplink timing group, together with uplink grant information. The processor is also configured to cause the UE to apply each TA value to the secondary CC for the respective second uplink timing group. For example, claims 5, 7, and 8 of the '503 Patent recite elements of uplink resource control mandated by at least the LTE/LTE-A standard, including at least the following 3GPP technical specifications: TS 36.321, and 36.331. Compliance with these technical specifications, and thus with at least the LTE/LTE-A standard,

requires the use of the invention recited in at least claims 5, 7, and 8 of the '503 Patent, including the functionality described in this paragraph.

66.    Upon information and belief, TCL and/or its subsidiaries or business partners has and continues to directly infringe at least claims 5, 7, and 8 of the '503 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 5, 7, and 8 of the '503 Patent (the "TCL Accused '503 Instrumentalities"). TCL also has and continues to directly infringe at least claims 5, 7, and 8 by practicing claims 5, 7, and 8 through the TCL Accused '503 Instrumentalities, and by causing the TCL Accused '503 Instrumentalities to practice the patented inventions.

67.    TCL Accused '503 Instrumentalities include, for example, the TCL 50 XL NXTPAPER 5G and other LTE-A compatible products that support carrier aggregation functionally mandated by the LTE-A standard. Further, each of the TCL Accused '503 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., MediaTek Dimensity 6100+) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with one or more of LTE Advanced, Release 11 or higher cellular communication standard, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 11 or later cellular communication standard. Furthermore, each of the Accused TCL '503 LTE-A Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC,

random access, and timing advance mechanisms in accordance with the LTE Release 11 or later cellular communication standard

68.    The TCL Accused '503 Instrumentalities also include, for example, the TCL 50 XL NXTPAPER 5G and other 5G compatible products mandated by the 5G standard, Release 16 and higher (i.e., with 3GPP TS 37.340, 3GPP TS 38.300, 3GPP TS 38.321, 3GPP TS 38.213, 3GPP TS 38.211, and/or 3GPP TS 38.331, and, to the extent relied upon below, the LTE cellular communication standard described in 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331). On information and belief, each of the TCL Accused '839 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., MediaTek Dimensity 6100+) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with the 5G Release 16 or higher cellular communication standard, including at least 3GPP TS 37.340, 3GPP TS 38.300, 3GPP TS 38.321, 3GPP TS 38.213, 3GPP TS 38.211, and/or 3GPP TS 38.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the 5G Release 16 or later cellular communication standards. Each such chipset also complies with the LTE Release 16 or higher cellular communication standard, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331. Further, each of the Accused TCL '503 5G Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the 5G and LTE Release 16 or later cellular communication standards.

69.    Pantech made TCL aware of the '503 Patent family and its infringement thereof at least as early as June 19, 2020, when Pantech explicitly identified '503 Patent family members in correspondence sent to TCL.

70.    Since the issuance of the '503 Patent, TCL's infringement has been, and continues to be, willful based on at least the fact that Pantech made TCL aware of the '503 Patent's family members on June 19, 2020.

71.    Upon information and belief, the TCL Accused '503 Instrumentalities are used, marketed, provided to, and/or used by or for TCL's partners, clients, customers/subscribers and end users across the country and in this district.

72.    Upon information and belief, TCL has induced and continues to induce others to infringe at least claims 5, 7, and 8 of the '503 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to TCL's partners, clients, customers/subscribers, and end users, whose use of the TCL Accused '503 Instrumentalities constitute direct infringement of at least one claim of the '503 Patent. For example, TCL advertises and has advertised the use of its devices for LTE-A and 5G communications. *See* https://www.tcl.com/us/en.

73.    In particular, TCL's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the TCL Accused '503 Instrumentalities, and providing instruction materials, training and services regarding the TCL Accused '503 Instrumentalities.

74.    Any party, including TCL's partners, clients, customers/subscribers, and end users, using the TCL Accused '503 Instrumentalities necessarily infringes the '503 Patent because the inventions of the '503 Patent are required to comply with the relevant cellular standards. TCL

advertises its TCL Accused '503 Instrumentalities as compliant with LTE-A and 5G, which induces others to infringe the '503 Patent. TCL has knowingly induced infringement since at least as early as the filing date of this Complaint, when TCL was made aware of the '503 Patent.

75.    Upon information and belief, TCL is liable as a contributory infringer of the '503 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the TCL Accused '503 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '503 Patent. Each of the TCL Accused '503 Instrumentalities is a material component for use in practicing the '503 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the TCL Accused '503 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

76.    Pantech has been harmed by TCL's infringing activities.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,051,344

77.    The allegations set forth in the foregoing paragraphs 1 through 76 are incorporated into this claim for relief.

78.    On June 29, 2021, U.S. Patent No. 11,051,344, entitled "Method for transmitting and receiving random access request and transmitting and receiving random access response" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 16/711,269. Through a series of continuation applications, the '344 Patent claims priority to KR 10-2008-0047656, filed May 22, 2008, and U.S. Provisional App. No. 61/018,492, filed January 1, 2008. at (30, 60, 63). A true and correct copy of the '344 Patent is attached as Exhibit 3.

79.     Pantech is the assignee and owner of all right, title and interest in and to the '344 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

80.     The '344 Patent discloses at least apparatuses and methods to receive a random access response from a base station within a time period starting at a time point after an end time of transmitting the random access preamble obtained by adding an offset to a subframe number corresponding to the end time of transmitting the random access preamble and the offset equals three and extract information associated with a subframe number of a subframe in which a random access preamble was transmitted by the user equipment and determine that the received random access response is a response to the transmitted random access preamble. For example, claims 2 and 6 of the '344 Patent recite elements of random access procedures mandated by the LTE standard, including at least 3GPP TS 36.300, TS 36.321, TS and TS 36.331 release 8 and higher. *See* 3GPP 36.321 v8.5.0 at 12-13 (§ 5.1.1, 5.1.2), 14 (§§ 5.1.3, 5.1.4) (the UE performs a random access procedure, including transmitting a RAP, monitoring for a RAR within a RA response window, and receives a RAR); 3GPP TS 36.300 v8.5.0 at 50 (§ 10.1.5.1) (the UE receives a RAR); 3GPP TS 36.321 v8.5.0 at 35-36 (§ 6.1.5); 3GPP TS 36.321 v8.5.0 at 37-38. (§ 6.2.2); 3GPP TS 36.213 v8.5.0 at 16-17 (§ 6.1); 3GPP TS 36.331 v8.5.0 at 123-124 (§ 5.1.1).

81.     Upon information and belief, TCL and/or its subsidiaries or business partners has and continues to directly infringe at least claims 2 and 6 of the '344 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 2 and 6 of the '344 Patent (the "TCL Accused '344 Instrumentalities"). TCL also has and continues to directly infringe at least claims 2 and 6 by practicing claims 2 and 6 through the TCL

Accused '344 Instrumentalities, and by causing the TCL Accused '344 Instrumentalities to practice the patented inventions.

82.    TCL Accused '344 Instrumentalities include, for example, the TCL 50 XL NXTPAPER 5G smartphone and other products that are compatible with the LTE cellular communication standard, Release 8 or higher, and specifically with 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, and/or 3GPP TS 36.213. On information and belief, each of the TCL Accused '344 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., MediaTek Dimensity 6100+) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with one or more of the LTE Release 8 or higher cellular communication protocols, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, 3GPP TS 36.213, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 8 or higher cellular communication standards. Further, each of the Accused '344 Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the LTE Release 8 or later cellular communication standards.

83.    Pantech made TCL aware of the '344 Patent family and its infringement thereof at least as early as June 19, 2020, when Pantech explicitly identified the '344 Patent's family members in correspondence sent to HMD. Pantech further made TCL aware of the '344 Patent and its infringement thereof at least as early as February 15, 2022, when Pantech identified the '344 Patent in correspondence sent to TCL.

84.     Since the issuance of the '344 Patent, TCL's infringement has been, and continues to be, willful based on at least the fact that Pantech made TCL aware of the '344 Patent's family members on June 19, 2020.

85.     Upon information and belief, the TCL Accused '344 Instrumentalities are used, marketed, provided to, and/or used by or for TCL's partners, clients, customers/subscribers and end users across the country and in this district.

86.     Upon information and belief, TCL has induced and continues to induce others to infringe at least claims 2 and 6 of the '344 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to TCL's partners, clients, customers/subscribers, and end users, whose use of the TCL Accused '344 Instrumentalities constitute direct infringement of at least claims 2 and 6 of the '344 Patent.

87.     In particular, TCL's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the TCL Accused '344 Instrumentalities, and providing instruction materials, training and services regarding the TCL Accused '344 Instrumentalities.

88.     Any party, including TCL's partners, clients, customers/subscribers, and end users, using the TCL Accused '344 Instrumentalities necessarily infringes the '344 Patent because the inventions of the '344 Patent are required to comply with the relevant cellular standard. TCL advertises its TCL Accused '344 Instrumentalities as compliant with 5G, which induces others to infringe the '344 Patent. TCL has knowingly induced infringement since at least as early as February 15, 2022, when TCL was made aware of the '344 Patent.

89.    Upon information and belief, TCL is liable as a contributory infringer of the '344 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the TCL Accused '344 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '344 Patent. Each of the TCL Accused '344 Instrumentalities is a material component for use in practicing the '344 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the TCL Accused '344 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

90.    Pantech Corp. has been harmed by TCL's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 12,267,876

91.    The allegations set forth in the foregoing paragraphs 1 through 90 are incorporated into this claim for relief.

92.    On April 1, 2025, the '876 Patent, entitled "Method for Transmitting and Receiving Random Access Request and Transmitting and Receiving Random Access Response," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 18/371,735, filed on September 22, 2023. Through a series of continuation applications, the '876 Patent claims priority to KR 10-2008-0047656, filed May 22, 2008, U.S. Provisional App. No. 61/018,492, filed January 1, 2008. at (30, 60, 63). A true and correct copy of the '876 Patent is attached as Exhibit 4.

93.    Pantech is the assignee and owner of all right, title and interest in and to the '876 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

94.    The '876 Patent's written description contains the same teachings of the '344 Patent's written description, and Pantech hereby incorporates the corresponding discussion at Count III. *Supra* ¶ 79.

95.    For example, claims 4-6 of the '876 Patent recite elements of random access procedures mandated by the LTE standard, including at least 3GPP TS 36.300, TS 36.321, TS and TS 36.331 release 8 and higher. *See* 3GPP 36.321 v8.5.0 at 12-13 (§ 5.1.1), 13, 14, 15 (§§ 5.1.3, 5.1.4) (the UE performs a random access procedure, including transmitting a RAP, monitoring for a RAR within a RA response window, and receives a RAR); 3GPP TS 36.300 v8.5.0 at 50 (§ 10.1.5.1) (the UE receives a RAR).

96.    Upon information and belief, TCL and/or its subsidiaries or business partners has and continues to directly infringe at least claims 4-6 of the '876 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 4-6 of the '876 Patent (the "TCL Accused '876 Instrumentalities"). TCL also has and continues to directly infringe at least claims 4-6 by practicing claims 4-6 through the TCL Accused '876 Instrumentalities, and by causing the TCL Accused '876 Instrumentalities to practice the patented inventions.

97.    TCL Accused '876 Instrumentalities include, for example, the TCL 50 XL NXTPAPER 5G smartphone and other products that are compatible with the LTE cellular communication standard, Release 8 or higher, and specifically with 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, and/or 3GPP TS 36.213. On information and belief, each of the TCL Accused '344 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., MediaTek Dimensity 6100+) (referred to herein as the "chipset") that incorporates a

processor and modem. Each such chipset (and thus each accused device) complies with one or more of the LTE Release 8 or higher cellular communication protocols, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, 3GPP TS 36.213, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 8 or higher cellular communication standards. Further, each of the Accused '876 Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the LTE Release 8 or later cellular communication standards.

98.     Pantech made TCL aware of the '876 Patent family and its infringement thereof at least as early as June 19, 2020, when Pantech explicitly identified '876 Patent family members in correspondence sent to TCL.

99.     Since the issuance of the '876 Patent, TCL's infringement has been, and continues to be, willful based on at least the fact that Pantech made TCL aware of the '876 Patent's family members on June 19, 2020.

100.    Upon information and belief, the TCL Accused '876 Instrumentalities are used, marketed, provided to, and/or used by or for TCL's partners, clients, customers/subscribers and end users across the country and in this district.

101.    Upon information and belief, TCL has induced and continues to induce others to infringe at least claims 4-6 of the '876 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to TCL's subsidiaries, partners, clients, customers/subscribers, and end users, whose use of the TCL Accused '876 Instrumentalities constitutes direct infringement of at

least one claim of the '876 Patent. For example, TCL advertises and has advertised the use of its devices for LTE communications. *See* https://www.tcl.com/us/en.

102.    In particular, TCL's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the TCL Accused '876 Instrumentalities, and providing instruction materials, training and services regarding the TCL Accused '876 Instrumentalities.

103.    Any party, including TCL's partners, clients, customers/subscribers, and end users, using the TCL Accused '876 Instrumentalities necessarily infringes the '876 Patent because the inventions of the '876 Patent are required to comply with the relevant cellular standard. TCL advertises its TCL Accused '876 Instrumentalities as compliant with LTE, which induces others to infringe the '876 Patent. TCL has knowingly induced infringement since at least as early as the filing date of this Complaint.

104.    Upon information and belief, TCL is liable as a contributory infringer of the '876 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the TCL Accused '876 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '876 Patent. Each of the TCL Accused '876 Instrumentalities is a material component for use in practicing the '876 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the TCL Accused '876 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

105.    Pantech Corp. has been harmed by TCL's infringing activities.

## **COUNT IX – BREACH OF FRAND**

106.    The allegations set forth in the foregoing paragraphs 1 through 105 are incorporated into this claim for relief.

107.    The European Telecommunications Standards Institute (ETSI) Rules of Procedure Annex 6 at Clause 3.2 states:

> IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

108.    Furthermore, under French Law, if an implementer of standard essential technology declares or otherwise indicates that it wishes to have a license on FRAND terms for the SEPs that were the subject of the FRAND undertaking, it avails itself of the ETSI policy, including Annex 6 at Clause 3.2, and becomes a beneficiary of it. An implementer of an adopted standard who has availed itself of FRAND protections and thereby invokes French legal protections but fails to negotiate in good faith towards a patent license agreement and thereby prevents a license from being granted on FRAND terms is liable to the patent holder for damages, including but not limited to attorney's fees and the cost of litigation.

109.    TCL specifically availed itself of the ETSI policy and became subject to Annex 6 at Clause 3.2 and French Law concerning obligations under this policy by communications with Pantech in which it invoked FRAND protections.

110.    TCL is and has been obligated to negotiate in good faith towards a patent license agreement for these patents on FRAND terms, which it has not done. TCL failed to negotiate in good faith and engaged in holdout behavior to extract unfair licensing terms.

111.    Pantech, which has complied with ETSI's intellectual property policy and has negotiated in good faith, has been harmed by TCL's breach of its FRAND obligations, wherein the damages include but are not limited to the attorney's fees and the cost of litigation it has thus far incurred and is incurring in its attempts to compel TCL to enter into a license on FRAND terms.

## COUNT X – UNJUST ENRICHMENT

112.    The allegations set forth in the foregoing paragraphs 1 through 111 are incorporated into this claim for relief.

113.    In negotiations with Pantech, TCL failed to negotiate in good faith and engaged in holdout behavior to extract unfair licensing terms. In so doing, TCL has been unjustly enriched, as it has continued to sell the accused products while invoking FRAND protections but has neither undertaken the expense of FRAND negotiations and investigation nor has it paid licensing royalties to adequately and fairly reward Pantech for the innovations of their SEP portfolio.

114.    In these circumstances, it would be inequitable for TCL to retain the benefits it has obtained. Pantech, which has complied with ETSI's intellectual property policy and has negotiated in good faith, has been harmed by TCL's failure to negotiate in good faith and holdout behavior.

## DAMAGES

As a result of TCL's acts of infringement, breach of FRAND obligations, and unjust enrichment, Pantech has suffered actual damages. To the fullest extent permitted by law, Pantech seeks recovery of damages at least in the form of reasonable royalties, along with damages suffered from TCL's breach of its FRAND obligations and restitution to compensate for TCL's unjust enrichment.

## NOTICE

Pantech Corp. complied with the notice requirement of 35 U.S.C. § 287 as they do not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents which

would require marking. In addition, TCL has had actual knowledge of the Asserted Patents and its

infringement thereof at least as of receipt of the Pantech notice letters identified in this Complaint.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Pantech demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Pantech demands judgment for itself and against TCL as follows:

A.    An adjudication that TCL has infringed one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

B.    An adjudication that TCL has indirectly infringed one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

C.    An award of damages to be paid by TCL adequate to compensate Pantech for TCL's past infringement of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.    A declaration that this case is exceptional under 35 U.S.C. § 285;

E.    An award of Pantech's reasonable attorneys' fees;

F.    A declaration that TCL's acts of infringement were willful;

G.    An award of enhanced damages against TCL pursuant to 35 U.S.C. § 284;

H.    A permanent injunction enjoining TCL, its officers, agents, servants, employees, and all persons in active concert or participation with them, from infringing, contributing to the infringement of, or inducing the infringement of the Asserted Patents.

I.    An adjudication that TCL has breached its FRAND obligations to Pantech;

J.      An award of damages to be paid by TCL adequate to compensate Pantech for damages suffered from its breach of FRAND obligations;

K.      An adjudication that TCL has been unjustly enriched;

L.      An award of restitution to compensate Pantech for TCL's unjust enrichment; and

M.      An award to Pantech of such further relief at law or in equity as the Court deems just and proper, including equitable relief which may be requested and to which Pantech is entitled.

Dated: July 3, 2025                                     Respectfully submitted,

*/s/ Geoffrey Culbertson*
Geoffrey Culbertson
Kelly Tidwell
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Blvd. (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

James A. Fussell, III
Jamie B. Beaber
Tiffany A. Miller
Clark S. Bakewell
Courtney Krawice
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
jfussell@mayerbrown.com
tmiller@mayerbrown.com
cbakewell@mayerbrown.com
ckrawice@mayerbrown.com

Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real

Palo Alto, CA 94306
(650) 331-2000
gbuccigross@mayerbrown.com

*Counsel for Plaintiff Pantech Corporation*